UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NERI TAWFIQ,

                *Plaintiff,*

*v.*

CHRISTOPHER CAULEY,

                *Defendant.*

_____/

CASE NO. 1:22-cv-10176
District Judge Paul D. Borman
Magistrate Judge Patricia T. Morris

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS
## (ECF No. 15)

**I.**    **RECOMMENDATION**

For the following reasons, I recommend that the Court **GRANT** Defendant's Motion to Dismiss (ECF No. 15) and **DISMISS** Plaintiff's complaint **WITHOUT PREJUDICE**.

**II.**    **REPORT**

    **A.**    **BACKGROUND**

Neri Tawfiq is a veteran and a patient at the Ann Arbor VA Medical Center. (*See* ECF No. 1, PageID.72). Tawfiq worked as a pharmacist at the VA's Saginaw Medical Center until March 2021 when Christopher Cauley, the Director of the Medical Center, terminated him for inappropriate "conduct" upon the recommendation of Tawfiq's supervisor, Theresa Dufresne. (*Id.* at PageID.79). Cauley sent Tawfiq a letter to inform

1

him of the decision; however, the letter did not explain why DuFresne recommended that

he be terminated, and Tawfiq went to the VA later that day to discuss his termination

DuFresne.  (*Id.* at PageID.69, 79–81).

Although Tawfiq asked DuFresne to provide "a list of things he did [which] led to

[his] termination," she provided him with few details, explaining that he was terminated

for a "conduct issue," and could appeal her decision.  (*Id.* at PageID.69–70).  Following

this conversation, Tawfiq left the pharmacy for a few minutes before he returned, "stating

that he [still] wanted to talk."  (*Id.*)  According to a pharmacy employee, Tawfiq had

become "loud" and "aggressive," and, seeking to diffuse the situation, this employee

called for an officer.  (*Id.* at PageID.69).  Tawfiq then left the area, but was later seen

speaking with police elsewhere in the facility.  (*Id.*)  Neither Tawfiq's complaint, nor his

attached exhibits, discuss his interaction with these officers.

About a week later, the Saginaw VA Medical Center reviewed Tawfiq's outburst

and determined that he posed a risk to patient and staff safety when visiting VA medical

facilities as a patient.  (*See id.* at PageID.62–63).  Based on that determination, the

Committee placed a "Patient Record Flag" in Tawfiq's record which required Tawfiq to

check in with VA Police whenever he arrived at a VA facility.  (*Id.* at PageID.63).  After

checking in, VA police were required to "escort[]" Plaintiff to and from his appointments.

(*Id.*)

On June 16, Tawfiq sent an email to Cauley, DuFresne, and three other VA

employees in which he promised to hold them "accountable for the hell that [they] have

put [him]" through.  (*Id.* at PageID.51).  Within hours of receiving this email, Tawfiq alleges that Cauley called the Saginaw Police Station and requested that they check on him.  (*Id.* at PageID.48, 52–53).  Cauley told the dispatcher that Tawfiq had a history of "suicidal ideations" and was known to carry a pistol, knife, and body armor.  (*Id.* at PageID.52).  Cauley also mentioned that Tawfiq had previously been terminated from his position from the VA and had since made "vague threats" against him.  (*Id.* at PageID.52–53).

A group of officers arrived at Tawfiq's apartment while Tawfiq was on a phone call with his physician.  (*Id.* at PageID.48, 52–54).  The officers knocked on Tawfiq's door and Tawfiq answered, opening the door just wide enough for the officers to see his face and left arm.  (*Id.* at PageID.52).  One of the officers asked Tawfiq for his name "multiple times," but each time, Tawfiq refused to identify himself until he eventually gave a false name.  (*Id.*)  Tawfiq then attempted to shut the door on the officers, but one of the officers, who was already "in the threshold of the door," caught the door and pushed it back open.  (*Id.*)  Tawfiq then grabbed the officer by his arm and the officer pushed Tawfiq back with his other arm.  (*Id.*)  Tawfiq then "balled his left fist up" and pulled his arm back, as though he were preparing to strike the officer.  (*Id.* at PageID.53).  But before Tawfiq could land a hit, the officer pulled his taser and instructed Tawfiq to step back.  (*Id.*)  The officers then handcuffed Tawfiq and transported him to the Saginaw County Jail.  (*Id.*)

Tawfiq later filed a complaint against Cauley in this Court, seeking monetary damages from Cauley in his individual capacity, and Cauley moved to dismiss Tawfiq's complaint. (ECF No. 1, PageID.50). Rather than file a response brief, Tawfiq chose to request a hearing before the Court. (ECF Nos. 16, 17). In his request, Tawfiq explained that he believed the AUSA assigned to this matter committed perjury by "submitting false statements to" the Court, but he did not elaborate on this statement. (ECF No 16, PageID.137; ECF No. 17, PageID.139). Although the undersigned informed Plaintiff she would decide Cauley's motion without oral argument, Tawfiq again moved for a hearing, and declined to file a response brief to Cauley's motion. (ECF Nos. 19–20).

## B.     STANDARDS OF REVIEW

Although Cauley purports to have filed a single motion to dismiss, he has actually filed two separate motions—one for substitution under 28 U.S.C. § 2679(d)(1) (2018) and one for dismissal under Federal Rule of Civil Procedure 12(b). (*See* ECF No. 15, PageID.118–19 (arguing that the Court should substitute the United States for Cauley as the named Defendant); ECF No. 15-2 (Attorney General's certification that Cauley acted within the scope of his employment); ECF No. 15-3); *see Singleton v. United States*, 277 F.3d 864, 870–73 & n.4 (6th Cir. 2002) (distinguishing between a motion to dismiss and a motion to substitute); *see, e.g.*, *McMullan v. United States*, No.17-5463, 2017 WL 8220209, at *1 (6th Cir. 2017). A motion for substitution under § 2679(d)(1) allows a federal employee to substitute the United States as the defendant to the plaintiff's tort claims if the defendant demonstrates that the suit concerns action that he or she took

within the scope of his or her employment, and generally, this motion is considered before a Court reaches the merits of a defendant's motion to dismiss. *See Capps v. Hester*, No. 1:20 CV 52 MR WCM, 2020 WL 8371878, at *3 (W.D.N.C. Dec. 30, 2020) (citing *Budik v. Ashley*, 36 F. Supp. 3d 132, 138–39 (D.D.C. 2014)).

### 1.   Motion for Substitution

The Attorney General, who "shall defend any civil action" against a federal employee, may move to substitute the United States as the defendant to a plaintiff's tort claims by filing a certification "that the defendant employee was acting within the scope of his office or employment at the time of the incident . . . ." 28 U.S.C. § 2679(c)–(d)(1). This certification raises a rebuttable presumption that the defendant acted within the scope of his employment, and the plaintiff carries the burden of producing evidence establishing that the certification is incorrect. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996). "If the plaintiff produces such evidence, the government must then produce evidentiary support for its certification." *Singleton*, 277 F.3d at 870–71. Ultimately, the district court must "resolve [any] disputes of fact necessary to the determination of scope of employment." *Id.* at 870 & n.6; *see also Heuton v. Anderson*, 75 F.3d 357, 360–61 (8th Cir. 1996).

### 2.   Rule 12(b)(1)

Should the Court grant its motion to substitute, (ECF No. 15, PageID.118–19), the Attorney General separately moves to dismiss Tawfiq's entire complaint under Federal Rule of Civil Procedure 12(b)(1).  Under Rule 12(b)(1) a defendant may move to dismiss

a complaint on the grounds that the district court lacks subject matter jurisdiction. Where subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of proving that the district court has jurisdiction. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). The court will accept the complaint's factual allegations as true insofar as the defendant facially challenges the "sufficiency of the pleading" itself. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). And where, as here, the plaintiff files his or her complaint pro se, the court must liberally construe the pleadings. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).     However, the complaint's factual allegations are not presumptively true where there is a factual controversy. *Ohio Nat. Life Ins. Co.*, 922 F.2d at 325. Instead, the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.*

### C.     ANALYSIS

#### 1.     Tawfiq's Claims

At the outset, I take a moment to clarify the claims Plaintiff brings against Cauley. Cauley explicitly identifies only one cause of action in his complaint—defamation. (ECF No. 1, PageID.48). Specifically, he alleges that Cauley "defame[d] him when he called the Saginaw Police on June 16, and that Cauley "slander[ed]" his "name" by "fabricat[ing]" his termination. (*Id.* at PageID.48, 52). Tawfiq also describes the patient flag as "fal[s]e." (*Id.* at PageID.48). However, Tawfiq appears to take issue with more

than just harm to his reputation, and his complaint "must be construed so as to do justice." Fed. R. Civ. P. 8(e).  As a pro se litigant, his complaint, "however inartfully pleaded, must be" construed "liberally" and "held to [a] less stringent standard[] than formal pleadings drafted by lawyers."   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Liberally construing his complaint, Tawfiq appears to also bring a common-law false arrest claim against Cauley.  Tawfiq alleges that Cauley "called into the Saginaw City Police Station" and "gave false allegations" that "resulted in [four] to [six] police officers" entering his home and arresting him.  (ECF No. 1, PageID.48).  Tawfiq also insinuates that Cauley lied to police by accusing him of "threatening" Cauley and other employees of the Medical Center and by telling police that he often wears "body armor" and carries a pistol and knife.  (*See id.* at PageID.48, 50–51).  Under Michigan law, an individual can be held personally liable for instigating a false arrest.  *Carter v. Shearer*, No. 21-10856, 2022 WL 989332, at *11–12 (E.D. Mich. Mar. 31, 2022) (citing *Lewis v. Farmer Jack Div., Inc.*, 415 Mich. 212, 218–19 (1982)).

Tawfiq also makes a vague allegation where accusing Cauley of "fabricating [his] termination of employment and putting a fale [sic] category [one] threat red flag on [his] profile nationwide to all of VA facilities across the country[,] resulting in [him] being afraid for [his] life, being harassed by VA police, and [losing] multiple jobs."  (ECF No. 1, PageID.48).  I suggest that this allegation is best construed as part of Tawfiq's defamation claim.

7

There are few other ways to interpret these allegations. A first blush, it might appear that Tawfiq desires judicial review of his termination and patient flag. But even assuming that the Court could review the merits of these decisions, Tawfiq does not request injunctive relief—he seeks only monetary damages from Cauley in his individual capacity. (*Id.* at PageID.49); *see* 5 U.S.C. § 706 (2018) (providing that judicial review of an agency action is limited to compelling an agency to act, holding an agency's action to be unlawful, or setting aside an agency's action). Nor does Tawfiq appear to bring a Title VII claim against Cauley. Although Tawfiq alleges that he is a "mix[ed] [B]lack male," he does not allege that Cauley discriminated against him based on his race. (ECF No. 1, PageID.78); *see Milledge v. City of Hartford*, No. 3:19-cv-01104, 2020 WL 3510813, at *3 (D. Conn. June 29, 2020) ("[A] claim for discrimination is not made plausible simply because the person who has engaged in an adverse action is of a different race than the plaintiff."); *Langston v. UFCW Local 19*, 2019 WL 6839336, No. 3:19-cv-00841, at *3 (D. Conn. Dec. 16, 2019).

Nor does it appear that Tawfiq simply wishes to hold Cauley liable for terminating him and issuing the flag without adequate reason. Tawfiq does not identify any law which would give him a private right of action for such claims, and the undersigned has not found any law that would allow Tawfiq to recover money damages from Cauley for terminating on false pretenses or for issuing a flag without adequate justification. Indeed, the Court lacks jurisdiction to consider any challenges to Tawfiq's termination, as the Civil Service Reform Act ("CSRA") provides the exclusive recourse, outside of Title VII,

8

for federal employees who wish to challenge their termination, and the Merit Systems Protections Board and the Federal Circuit hold exclusive jurisdiction over CSRA claims. 5 U.S.C. §§ 7701, 7703(d), 7512 (2018); *Sweeney v. Napolitano*, No. H-08-3701, 2009 WL 10718879, at \*2 (S.D. Tex. Aug. 21, 2009); *Coe v. N.L.R.B.*, 40 F. Supp. 2d 1049, 1053 (E.D.Wis.1999) (Title VII of the Civil Rights Act of 1964, as amended, and the CSRA provide the exclusive remedies for federal employees with employment discrimination claims and nondiscriminatory employment claims, respectively).

Likewise, as to the patient flag, Cauley implemented the flag pursuant to 38 C.F.R. § 17.107 (2022); however, this regulation does not purport to confer a private right of action against officials who improperly implement flags. And even if it did, only Congress can invoke a private right of action, and the undersigned has found no statute which permits patients to recover money damages from employees of the Veterans Health Administration who violate the Administration's regulations. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001); *see also Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993).

To summarize, Tawfiq's complaint, liberally construed, brings just two potentially cognizable claims against Cauley: a state-law defamation claim and a state-law false arrest claim.

### 2. Federal Tort Claims Act

For the following reasons, I suggest that the Court lacks subject matter jurisdiction over Tawfiq' complaint and it should dismiss the complaint before reaching Cauley's

motions to substitute and to dismiss.  *See Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990) ("[S]ubject matter jurisdiction may be raised sua sponte at any juncture because a federal court lacks authority to hear a case without subject matter jurisdiction.").  And even if the Court were to reach Cauley's motions, I suggest that Tawfiq's claims would be barred by sovereign immunity.

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute . . . ."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).   Accordingly, the Court cannot adjudicate Tawfiq's claims against Cauley without some statutory basis.  *Id.*

The FTCA allows individuals to sue the federal government for torts committed by federal employees "acting within the scope of [their] office or employment . . . ."  28 US.C. §§ 1346(b)(1), 2672 (2018).  However, the FTCA, standing alone, does not provide a cause of action.  *Pornomo v. United States*, 814 F.3d 681, 687 (4th Cir. 2016).  Instead, the Act serves two functions.  First, it waives the United States' absolute immunity from suit.  *Premo v. United States*, 599 F.3d 540, 544 (6th Cir. 2010).  Although the federal government is generally immune from lawsuits for monetary damages, the FTCA waives the government's sovereign immunity (subject to various exceptions) where federal employees commit torts while acting within the scope of their employment.  *Id.*; *Evans v. United States*, 876 F.3d 375, 380 (1st Cir. 2017); *see United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Second, the FTCA grants the district courts "exclusive jurisdiction" over tort actions concerning the conduct of federal employees when they act in the scope

of their employment.  28 U.S.C. § 1346(b)(1).  Thus, the FTCA simply provides a vehicle through which individuals can bring state tort actions against the United States.

The FTCA also provides the "exclusive" remedy for state torts committed by federal officials acting within the scope of their employment.  28 U.S.C. § 2697(b)(1) (2018).  In other words, individuals who are injured by a federal employee, while that employee was acting within the scope of his or her employment, may only bring a tort action against the United States pursuant to the FTCA—they may not instead sue a federal official or a federal agency.  *Simmons v. Himmelreich*, 578 U.S. 621, 628 (2016).  Thus, an individual like Tawfiq, who wishes to bring a state tort action based on the conduct of a federal employee, has only two avenues for relief in federal court.  First, if the official acted within his or her scope of employment, then the plaintiff must bring an FTCA action against the United States.  *Levin v. United States*, 568 U.S. 503, 507, 510 (2013). Alternatively, if the official did not act within the scope of his or her employment, then the plaintiff may sue the official directly, provided that the plaintiff can assert some other basis for federal jurisdiction.  28 U.S.C. § 2679(b)(1); *see Moreland v. Barrette*, No. CR 05- 480 TUC DCB, 2007 WL 2480235, at *3 (D. Ariz. Aug. 28, 2007); *Matthews v. United States*, 805 F. Supp. 712, 715 (E.D. Wis. Oct. 8, 1992) ("[W]hen an action is brought against a federal employee pursuant to some other grant of jurisdiction—say, diversity jurisdiction—it may be converted into an FTCA case upon the Attorney General's certification.").

11

Here, Tawfiq's complaint does not fall under the scope of the FTCA.  In an FTCA action, the United States is the only proper defendant.  28 U.S.C. §§ 1346(b)(1), 2679(a). Actions against federal agencies or Government employees, even in their official capacities, are not cognizable under the FTCA.  *Briscoe v. United States*, 268 F. Supp. 3d 1, 9 (D.D.C. July 25, 2017).  *Compare Meyer*, 510 U.S. at 476 (1994) (recognizing that the proper defendant in an FTCA action is the United States, not a federal agency), *with Loeffler v. Frank*, 486 U.S. 549, 562 n.8 (1988) (recognizing that an official capacity suit against a federal official is a suit against the official's agency, rather than the United States).  However, rather than sue the United States, Tawfiq brought his claim against an individual official; thus, he cannot bring this action via the FTCA.  *Cf. Elliott v. Telerico*, No. 15-3156, 2015 WL 4130755, at *3 (N.D. Cal. July 8, 2015); *Tolson v. Stanton*, 844 F. Supp. 2d 53, 57 (D.D.C. 2012).

There appears to be no other basis for subject matter jurisdiction.  This Court cannot assert jurisdiction under 28 U.S.C. § 1331 (2018) because Tawfiq's complaint does not raise a federal question—he alleges only violations of state law.  *See Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020).  Tawfiq also cannot assert jurisdiction under 28 U.S.C. § 1332 (2018) because he does not allege that he and Cauley are "citizens of different states."  And while Tawfiq suggests that the VA's "Employee/Management Relations" handbook" provides a basis for jurisdiction, "[o]nly the Constitution and federal statutes can confer subject matter jurisdiction on the federal courts."  *In re Tara Retail Group, LLC*, 634 B.R. 509, 516 (N.D. W. Va. 2021).  Moreover, Cauley correctly recognizes that

12

this handbook does not even "purport to confer subject matter jurisdiction." (ECF No. 15, PageID.117). Accordingly, because the Court already lacks jurisdiction over Tawfiq's complaint, it cannot reach Cauley's motion to substitute. *See Scott v. Inter-Con Sec. Sys., Inc.*, No. 19-12655, 2020 WL 4437537, at *4 (E.D. Mich. Aug. 3, 2020) (quoting *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990)).

But even if the Court did reach Cauley's motion to substitute, I suggest that it would still lack subject matter jurisdiction. Where a plaintiff brings a tort claim against a federal employee, rather than the United States, the FTCA permits the Attorney General to certify that the employee acted within the scope of his or her employment and substitute the United States as the defendant to the plaintiff's tort claims. *Timberline Northwest Inc. v. Hill*, No. 96-35763, 1998 WL 123119, at *1–2 (9th Cir. Mar. 17, 1998) (explaining that under § 2679(d)(1), the Attorney General may only substitute the United States as the defendant as to claims that fall under the scope of the FTCA). As explained above, this certification serves as prima facie evidence that the defendant acted within the scope of his or her employment. *RMI Titanium Co.*, 78 F.3d at 1143. Once the Attorney General certifies that the defendant acted within the scope of his or her employment, the burden then shifts to the plaintiff to "produc[e] evidence that the certification is incorrect." *McMullan v. United States*, No. 17-5463, 2017 WL 8220209, at *2 (6th Cir. Dec. 13, 2017).

Whether a federal employee acted "within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct

occurred." *RMI Titanium Co.*, 78 F.3d at 1143.  Under Michigan law, an employee acts "within the scope of his employment if he is engaged in the service of his master." *Arbour v. Jenkins*, 903 F.2d 416, 422 (6th Cir. 1990).  The central inquiry is whether the employee's actions were "within his authority" or whether the employee's actions were "undertaken in furtherance of the employer's purpose." *Id.*; *Backus v. Kauffman*, 238 Mich. App. 402, 408 (1999).  Even if an employee's action was not "specifically" authorized by the employer, the act may still fall within the employee's scope of employment if it is "similar" or "incidental" to conduct that has been authorized by the employer. *Grossman v. Liss & Assocs., P.C.*, No. 234322, 2003 WL 328039, at *3 (Mich. Ct. App. Feb. 11, 2003).

An employee does not act in furtherance of her employer's purpose where she completely "steps aside from her employment" to "accomplish some purpose of her own". *Id.*  However, an employee who simultaneously advances both his or her own interests and his or her employer's interests still acts within the scope of his or her employment— the employee's actions need not exclusively benefit the employer. *Arbour*, 903 F.2d at 422.  Even intentional torts may fall within an employee's scope of employment if they were authorized by the employer and advance the employer's interests. *Id.*

Here the Attorney General certified that Cauley was acting within the scope of his employment during the incidents underlying Tawfiq's tort claims. (ECF No. 15-2, PageID.126–27).  Although this certification created a rebuttable presumption that Cauley acted within the scope of his employment, Tawfiq chose not to respond to respond to the

motion. *See RMI Titanium Co.*, 78 F.3d at 1143. Tawfiq did, however, attach several exhibits to his complaint which shed light on the issue, but none of these exhibits contain any information which would rebut the Attorney General's certification.

Indeed, Tawfiq's defamation claim stems from Cauley's exercise of his official duties. To the extent that Tawfiq's defamation claim arises from statements made in Cauley's termination letter, the decision to terminate or hire his subordinates falls squarely within Cauley's scope of employment as the Director of the Saginaw Medical Center. (*See* ECF No. 1, PageID.48, 79–81). And to the extent that Tawfiq alleges that Cauley defamed him by imposing a patient flag, this conduct, too, falls within Cauley's scope of employment, as 38 C.F.R. § 17.107 authorizes Cauley to restrict the "time, place, [or] manner" of any patient's medical care if he determines that the patient's behavior could "jeopardize the health or safety of other patients" at the facility. Even if Tawfiq could show that this conduct constituted an intentional tort, this would not be sufficient to demonstrate that Cauley acted outside the scope of his employment. *Arbour*, 903 F.2d at 422.

Likewise, Tawfiq does not present any evidence demonstrating that his false arrest claim arises from conduct outside the scope of Cauley's employment. In his complaint, Tawfiq attaches a copy of an email he sent to Cauley and several other employees of the Saginaw Medical Center in which he promises to hold them "accountable" for "the hell [they] have put" him through. (ECF No. 1, PageID.51). Within hours of receiving this email, Tawfiq alleges that Cauley called the Saginaw Police and asked the dispatcher to

send officers to check on Tawfiq, explaining that Tawfiq threatened him and that Tawfiq was "known to carry a Glock pistol" and a "knife." (*See id.* at PageID.48, 51–52).

Assuming that Cauley made this call, and that his statements to the police would be sufficient to establish liability for a false arrest, I suggest that the phone call fell within the scope of Cauley's employment. Although Cauley may have been motivated by personal interests, such as ensuring his own safety, the call also would have furthered the VA's interests. *See Backus*, 238 Mich. App. at 408. As the director of the Saginaw Medical Center, Cauley is responsible for overseeing the Medical Center and ensuring that the Center functions properly. One duty that is "incidental" to this general responsibility is maintaining a safe work environment for his subordinates. *Grossman*, 2003 WL 328039, at *3. Indeed, by protecting his subordinates from perceived threats made by disgruntled former employees, Cauley facilitates an environment where other employees can perform their work without concern for the physical safety. This, in turn, allows the facility's employees to effectively carry out their duties and advances the VA's interest in providing adequate medical care to its patients. Thus, by informing the police of Tawfiq's email, which appeared to also be directed at several other employees of the medical center, Cauley acted within the scope of his employment. *See Arbour*, 903 F.2d at 422.

Accordingly, I suggest that Tawfiq has not presented sufficient evidence to rebut the Attorney General's certification that Cauley acted within the scope of his employment, and the Court should substitute the United States as the defendant with

16

respect to Tawfiq's false arrest and defamation claims if it finds that it has subject matter jurisdiction over Tawfiq's complaint.

Should the Court substitute the United States as the defendant to Tawfiq's tort claims, then these claims would "fall[] under the governance of the" FTCA. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 419–20 (1995). However, while the FTCA provides Tawfiq's exclusive remedy, its waiver of sovereign immunity is not without limits. *See United States v. Smith*, 499 U.S. 160, 166 (1991) ("[T]he FTCA [is the] exclusive mode of recovery for the tort of a government employee even when the FTCA itself precludes Government liability."). And here, two exceptions to the FTCA's waiver of sovereign immunity prevent the Court from exercising jurisdiction over Tawfiq's complaint. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (explaining that sovereign immunity is a "jurisdictional" issue). First, the FTCA does not waive sovereign immunity from defamation or false arrest claims except for those committed by "investigative" officers. 28 U.S.C. §2680(h); *see also Rector v. United States*, 243 F. App'x 976, 980 (6th Cir. 2007).

And second, the FTCA does not waive jurisdiction where a plaintiff fails to exhaust his or her administrative remedies. 28 U.S.C. § 2675(a). Because exhaustion under the FTCA is "jurisdictional," the Plaintiff bears the burden of "both plead[ing] and prov[ing]" exhaustion. *In re Agent Orange Product Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987). However, Tawfiq did not allege that he exhausted his administrative remedies and Defendant notes that he has not exhausted his administrative remedies. (ECF No. 15 at

17

PageID.119.) Thus, even if the Court could reach the merits of Cauley's motions for substitution and dismissal, the Court would still lack jurisdiction over Tawfiq's complaint.[1]

## III. CONCLUSION

For these reasons, I recommend that the Court **DISMISS** Plaintiff's complaint **WITHOUT PREJUDICE**.[2]

## IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making

---

[1] Because it lacks subject matter jurisdiction, the Court should not reach the merits of Tawfiq's tort claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.")

[2] Dismissals for lack of subject matter jurisdiction should be without prejudice because the court "lacks the power to reach the merits of the case." *Revere v. Wilimington Fin.*, 406 F. App's 936, 937 (6th Cir. 2011) (citing *Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005)).

some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 29, 2022                    S/ PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge